IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MATTHEW TYLER,

                          Plaintiff,

      v.

STEPHANIE WICK, SANDRA HANSEN,
PETER MARIK, K. MARKS, DAVID H. SCHWARZ,
MARGARET BECKWITH, DEBORAH MCCULLOCH,
ROBERT KNEEPKENS, JEFFREY P. HRUDKA,
MARK SPEES, ALBERT LAVENDER, ERIC SWIATLY,
MIKE LUTZ, VAL LITTY, DONNA HEDRICH,
JAMIE OLSON, STEVE SCHNEIDER,
and WILLIAM PARKER,

                     Defendants.

OPINION & ORDER

14-cv-68-jdp[1]

Plaintiff Matthew Tyler, a person civilly committed to the Sand Ridge Secure Treatment Center under Wis. Stat. Chapter 980, brings this lawsuit alleging that various state officials violated his rights with regard to his probation revocation and several other issues during his placement at state facilities. The case was removed to this court by defendants. Plaintiff brings a wide variety of claims, including claims under the United States Constitution, the Americans with Disabilities Act, the Health Insurance Portability and Accountability Act, and several different state statutes and administrative regulations.

Currently before the court is a motion for preliminary injunctive relief by plaintiff seeking access to his legal materials, which I will deny because plaintiff fails to show that defendants are blocking him from litigating this case. Also before the court is defendants' "motion for summary judgment restricted to threshold issues."[2] Because discovery was stayed

---

[1] This case was reassigned to me pursuant to a May 19, 2014 administrative order. Dkt. 24.

[2] Early in the proceeding, defendants filed a motion for judgment on the pleadings but subsequently withdrew that motion in favor of the current motion for summary judgment,

for litigation of this motion, I will only consider arguments raised by defendants that do not require resolution of disputed issues of fact that might require discovery by plaintiff. After considering the submissions by the parties, I conclude that almost all of plaintiff's complaint must be dismissed, either for plaintiff's failure to state claims upon which relief may be granted, or because he is barred from bringing certain claims. However, at this point, I will not dismiss plaintiff's federal and state claims against defendant Agent Lutz in her individual capacity for making false statements at plaintiff's revocation hearing.

## LEGAL MATERIALS

As the parties were briefing defendants' original motion for judgment on the pleadings, plaintiff argued that his "legal material and other important documents necessary to prove his assertions are part of the 12 boxes of property that are in the possession of defendants." Dkt. 32. Magistrate Judge Crocker gave defendants a chance to respond to plaintiff's allegations. Dkt. 65. Defendants responded that the 12 boxes of property were forwarded to a contact, Ronald Tyler, chosen by plaintiff, and that plaintiff had at some later point received some of those materials back from his contact. Plaintiff's reply is somewhat difficult to understand; it seems that plaintiff has not had access to all 12 boxes of material, but he does not appear to dispute that he is in personal possession of at least some of the material. Plaintiff's submission of over 100 pages of exhibits also suggests that he has access to materials to litigate this case. Dkt. 74.

---

stating that given plaintiff's responses to the motion for judgment on the pleadings, "documentation beyond the pleadings may well be needed by the court to resolve all of [plaintiff's] claims." Dkt. 29 at 5.

In any event, to the extent that I understand plaintiff to be asking for preliminary injunctive relief regarding the provision of these materials, I would only consider such drastic action if I thought that defendants were actively blocking plaintiff from litigating this action. This is clearly not the case given the large amount of materials that plaintiff has been able to submit. Further, from plaintiff's briefing, he is not able to raise any compelling reason to think that he has been hampered from presenting evidence or argument. As stated in more detail below, the real problem with plaintiff's case is that he raises a series of claims that are either frivolous or barred. Because plaintiff fails to show that the court should intervene in his possession of legal materials, I will deny his motion for preliminary injunctive relief.

SUMMARY JUDGMENT

**A.     Undisputed Facts**

The following facts are undisputed unless noted otherwise.

Plaintiff Matthew Tyler is civilly committed under Wis. Stat. Chapter 980, the Wisconsin sexually violent persons law. He is currently housed at the Sand Ridge Secure Treatment Center, a facility in Mauston, Wisconsin, that provides specialized treatment services for persons committed under Chapter 980.

Until December 10, 2012, defendant Margaret Beckwith was an administrative law judge with the Division of Hearings and Appeals (DHA) and, until June 11, 2013, defendant David Schwartz was the administrator of DHA. Until July 13, 2012, Defendant Stephanie Wick was a probation and parole agent with the Division of Community Corrections (DCC), part of the Wisconsin Department of Corrections (DOC). Wick's surname was Lutz during the events relevant to this case, so in keeping with the parties' submissions, I will refer to her as Agent Lutz. Defendant Sandra Hansen is a corrections field supervisor who supervises probation and

3

parole agents. Hansen's surname during the events relevant to the events of this case was Bucholtz, so I will refer to her by that name. Defendant Peter Marik is also a corrections field supervisor. Defendant Kimberly Marks was an offender classification specialist at the Milwaukee Secure Detention Facility.

Several of the defendants either work at the Sand Ridge Secure Treatment Center or used to work there. Defendant Deborah McCulloch is the director, defendant Robert Kneepkens was deputy director from April 18, 2010 to May 31, 2014, defendants Jeffrey Hrudka and Mark Spees are institution unit managers, defendant Albert Lavender, Eric Swiatly, and Val Litty are psychiatric case supervisors, defendant Mike Lutz is an administrative psychiatric case supervisor, defendant Donna Hedrich is a social worker, defendant Jamie Olson is a registrar, defendant Steve Schneider is a security director, and defendant William Parker was a supervising officer until July 14, 2012.

On October 17, 2001, plaintiff was sentenced on a conviction for second-degree sexual assault of a child to seven years of confinement and 13 years of extended supervision. A condition of that sentence was that plaintiff "[c]ontinue counseling and other assessments to be determined." On October 24, 2008, with his mandatory release date approaching, Plaintiff signed "Rules of Community Supervision" that imposed additional conditions governing his term of extended supervision. Those rules anticipated his being released from a DOC institution into extended supervision and then transferred to the Wisconsin Resource Center (WRC), operated by the Department of Health Services, pending a Chapter 980 hearing. In late October 2008, plaintiff was transferred to WRC. On July 7, 2010, plaintiff was found to be a sexually violent person and was civilly committed under Chapter 980. On March 31, 2011, plaintiff was transferred from WRC to Sand Ridge.

Before this case commenced, plaintiff challenged by certiorari proceeding conclusions by Beckwith as an ALJ and then by Schwarz that, after being transferred to Sand Ridge, he had dual status as a person both committed under Chapter 980 and on extended supervision and was subject to the conditions of extended supervision while at Sand Ridge.

On April 30, 2011, a Sand Ridge patient confidentially reported to staff that, on April 24, 2011, he witnessed plaintiff and another patient engaging in anal intercourse. Plaintiff was placed on a temporary 72-hour reassignment pending an investigation. Sexual conduct by patients, whether consensual or non-consensual, was prohibited in 2011 at Sand Ridge by written Policy and Procedure # SR 477.

On May 2, 2011, Lavender, at Spees's direction, began investigating allegations that plaintiff had engaged in anal sex with "BJ," another Sand Ridge patient. BJ admitted that plaintiff and he engaged in unauthorized sexual contact. Lavender, through his investigation, determined that plaintiff engaged in unauthorized sexual conduct and lied or provided inaccurate information when questioned.

On May 5, 2011, plaintiff withdrew from required treatment assessments at Sand Ridge, stating, "Based on my experiences thus far at SRSTC, it is not in my best interest to continue."

On May 6, 2011, Spees issued a behavior disposition record (BDR) for plaintiff for sexual conduct and lying or providing inaccurate information. On May 9, 2011, plaintiff was reassigned to a secure treatment wing and placed on a "step" program. Plaintiff moved through the stages of this program under the review of Hrudka and Schneider.

Plaintiff appealed the BDR to a hearing committee consisting of Swiatly, Mike Lutz, and Litty. The committee upheld the BDR because, after reviewing the investigative documents and hearing documents, it concluded it was more likely than not that the alleged offense occurred and concluded plaintiff's reassignment to a secure treatment wing and to the step program was

an appropriate disposition given the offense. Plaintiff appealed that decision, which McCulloch upheld on May 17, 2011.

The only involvement Olson had with plaintiff was giving him the "Admissions Notices and Consent" form that he filed, and later responding to staff requests for documents regarding the BDR.

Agent Lutz was plaintiff's probation agent. Based on a discussion at a May 10, 2011 "Clinical Management Team" Meeting, and at Schneider's recommendation, Hrudka e-mailed Agent Lutz on May 16, 2011, stating that plaintiff received a BDR report for sexual conduct and lying or providing inaccurate information. Agent Lutz was the only person outside of Sand Ridge to whom Hrudka provided that information.

On May 17, 2011, Agent Lutz consulted with Bucholtz, who was her supervisor, and other agents. Lutz and the others decided to place a probation hold on plaintiff pending an investigation. On May 24, 2011, plaintiff declined to give Agent Lutz a statement. On June 2, 2011, plaintiff was transported from Sand Ridge to the Milwaukee Secure Detention Facility based on his probation hold.

On June 7, 2011, Bucholtz and Agent Lutz conducted a "Conference Case review." On June 9, 2011, Agent Lutz completed a report that listed two alleged rule violations: that plaintiff had (1) engaged in unapproved sexual activity in violation of the 2001 judgment of conviction and Sand Ridge admissions notices and consents; and (2) refused to cooperate with treatment opportunities offered to him in violation of the 2001 judgment of conviction.

According to plaintiff, in the course of a May 31, 2011 videoconference with another patient facing revocation, "Lee R.," the patient told Agent Lutz that he had two witnesses, one being plaintiff, who could testify about a separate incident. Agent Lutz responded by cautioning Lee R. against relying on plaintiff as a witness because plaintiff was "in his own trouble" and

6

facing revocation for "sexual misconduct misbehavior" at Sand Ridge and because plaintiff "was not credible."

On July 6, 2011, Agent Lutz prepared and signed a "Revocation Summary" document stating that placing plaintiff in a halfway house was "unavailable for civilly committed offenders" and that "Institutional Programming for community-based SOT, CGIP" was "currently unavailable" for civilly committed offenders who were required, under Chapter 980, to be housed "at a treatment facility." Agent Lutz evaluated alternatives to revocation as part of standard revocation procedures and then testified about alternatives to revocation as part of standard procedures during the resulting hearing. Agent Lutz had also stated in the Revocation Summary that an "RCI SOT [Alternative to Revocation] Program" was inappropriate because plaintiff had "completed the Beacon Program SO-4: Intensive Residential" that was already "more intensive" than the "RCI SOT ATR Program."

Accordingly to plaintiff, during the September 21, 2011 hearing session, Agent Lutz testified that plaintiff had completed the Beacon program, that this was false, that she knew it was false when she testified, and that she refused to correct that statement either when cross-examined or when challenged in an appeal to the administrator. Defendants deny that Agent Lutz intentionally made misstatements. Plaintiff also alleges that, through June 23, 2012, Bucholtz and Agent Lutz intentionally withheld information that plaintiff had not completed the Beacon Program. Defendants dispute this.

In a September 28, 2011 decision, Beckwith determined that the DOC had not sustained its burden of proving the first alleged rule violation regarding unauthorized sexual conduct, but determined that the DOC had sustained its burden of proving the second alleged rule violation, that he had refused to cooperate with treatment opportunities offered to him. While acknowledging plaintiff's arguments that he could refuse treatment as a person

committed under Chapter 980, Beckwith concluded that plaintiff was concurrently on extended supervision and had violated the 2001 judgment of conviction by having "specifically refused to participate in an assessment" of treatment options. Beckwith determined that alternatives to revocation were considered and that no viable alternatives existed and then revoked plaintiff's extended supervision. Plaintiff appealed to Schwarz as DHA administrator and, on October 26, 2011, Schwarz sustained Beckwith's decision, noting that plaintiff had refused "counseling and assessment determined to be necessary as part of his treatment as a sexually violent person."

Plaintiff's extended supervision was revoked and he was ordered to be returned to the Dodge Correctional Institution and re-incarcerated there for a period of nine months. However, plaintiff was transferred back to Sand Ridge about four months later, on February 28, 2012.

Plaintiff challenged the administrator's decision in the Wisconsin courts through certiorari proceedings. The decision was affirmed by a circuit court decision on September 12, 2012, and by a Wisconsin Court of Appeals decision issued on August 22, 2013. Plaintiff sought review by the Wisconsin Supreme Court, but was denied.

Plaintiff alleges that he informed the ALJ at the July 28, 2011 and the September 21, 2011 revocation hearings that "legal material" was being "withheld through the actions" of Agent Lutz, McCulloch, Kneepkens, and Parker." Plaintiff was represented by an attorney throughout that hearing.

On August 1, 2011, Kneepkens responded to a letter from plaintiff in which plaintiff "expressed concern about not receiving [his] money or property." Kneepkens suggested to plaintiff that he provide the address of a family member so that, in the event he was revoked, Sand Ridge could send his property to that family member.

On November 29, 2011, Parker sent plaintiff a certified letter at MSDF, where he remained housed, giving him until December 12, 2011 to provide an address. Plaintiff provided

8

Sand Ridge an address to send his property, to "Mr. Ronald Tyler in Texas" and, on December 21, 2011, the 12 boxes of property involved were mailed by Sand Ridge to Ronald Tyler.

Plaintiff was transferred back to Sand Ridge on February 28, 2012. In March, plaintiff and Parker corresponded about shipping at least some of plaintiff's property back to Sand Ridge. The parties disagree about whether plaintiff received all of his legal materials.

Marks, working as an offender classification specialist, prepared an "Inmate Classification Report" dated December 30, 2011, regarding the proper level of security for plaintiff's placement. Plaintiff believes that Marks falsified some of the information on the report. Marks disputes this.

**B.      Analysis**

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999).

**1.      Individual capacity claims**

I understand plaintiff to be bringing the following claims:

- Defendants Spees, Lavender, Swiatly, Mike Lutz, Litty, Hedrich, Olson, Schneider, and McCulloch conspired to violate his due process rights in his BDR hearings and appeals.

- Defendants Hrudka and Agent Lutz released confidential information without plaintiff's consent.

- Defendants Agent Lutz, Bucholtz, Beckwith, Schwartz, and Marik all took actions resulting in plaintiff's probation being revoked even though he was a 980 patient.

- Agent Lutz discriminated against plaintiff in the revocation proceedings by not considering plaintiff for certain "alternatives to revocation."

- Defendant Agent Lutz and Bucholtz allowed false testimony about plaintiff's completion of programming, making it more likely that he would be revoked.

- Defendant Marks intentionally prepared classification forms with false information.

- Defendants Agent Lutz, Kneepkens, McCulloch, and Parker prevented him from obtaining his money and legal property, depriving him of access to the courts.

### a.    Due process in BDR proceedings

Plaintiff alleges that defendants Spees, Lavender, Swiatly, Mike Lutz, Litty, Hedrich, Olson, Schneider, and McCulloch conspired to violate his due process rights in his BDR hearings and appeals. Plaintiff states that he "was not allowed to present evidence, cross examine witnesses, or face his accusers. He was not given copies of the reports or other evidence that was being used against him to impose disciplinary restrictions." Dkt. 2-2, at 7. However, Chapter 980 patients, like prisoners, are not entitled to due process protections unless their duration of confinement is increased or they are subjected to an "atypical and significant" hardship. *Thielman v. Leean*, 282 F.3d 478, 483-84 (7th Cir. 2002); *see also Sandin v. Conner*, 515 U.S. 472, 484 (1995) (describing "atypical and significant" hardship standard for prisoners). This court has previously concluded that the usual consequences of a BDR hearing for Chapter 980 patients does not constitute "atypical and significant" hardship, so he cannot bring due process claims regarding how the hearing was conducted. *See, e.g.*, *Martin v. Bartow*, 2009 WL 4042896, at *1 (W.D. Wis. Nov. 19, 2009) (Chapter 980 patient's loss of various activities and privileges did not create liberty interest under *Sandin*); *Hogan v. State of Wisconsin*, 2006 WL

2849870, *2 (W.D. Wis. 2006) (Chapter 980 patient did not retain liberty interest in level of classification, including placement in short-term segregated confinement); *see also Thielman*, 282 F.3d at 483-84 ("*Sandin* teaches that any person already confined may not nickel and dime his way into a federal claim by citing small, incremental deprivations of physical freedom.").

Plaintiff argues that his duration of confinement *was* increased, because, as a person with "dual status" as a Chapter 980 patient and as a probationer, he was sent to prison because of the BDR. Dkt. 71, at 20. However, the undisputed facts show that the BDR had nothing to do with the revocation proceedings. The ALJ revoking plaintiff's probation concluded that the state did *not* establish a probation violation on the allegations regarding sexual conduct that were also part of the BDR. Dkt. 59-4, at 204. Instead, plaintiff's probation was revoked because of his refusal to continue assessments, which was not part of the BDR. *Id*. at 204-05. Accordingly, plaintiff fails to state a claim that any of his due process rights were violated by the BDR process.

I also understand plaintiff to be arguing that his rights under Wis. Stat. § 51.61 (titled "Patients rights") were violated by the BDR process. However, under Wisconsin's notice of claim law, Wis. Stat. § 893.82, he cannot maintain a state law cause of action without first submitting written notice of his claims to the Wisconsin attorney general, stating the time, date, location, and circumstances of the events giving rise to the claims, and the names of people involved. Plaintiff's notice of claim in this action does not reference any of the events concerning the BDR, and as is discussed further below, would not have been timely filed following these events, even if plaintiff had included them in his notice.

11

**b.    Confidential information**

I understand plaintiff to be bringing claims against defendant Hrudka for sending confidential "protected health information" to defendant Agent Lutz without plaintiff's permission.

> Hrudka sent Agent Lutz an email stating:
>
> Here is the scanned copy of the BDR on SRSTC patient Matthew Tyler. He is currently appealing the BDR to the Director. Pt Tyler also withdrew from treatment upon receipt of this BDR. Please call me with any questions or concerns. Thank you.

Dkt. 64-2 at 91. This message appears to have spurred Agent Lutz to place a probation hold on plaintiff.

The question is what potential claims could arise from this allegation. In his complaint, plaintiff cites the Health Insurance Portability and Accountability Act (HIPPA), but he cannot bring such a claim because HIPAA does not create a private cause of action or an enforceable right for purposes of a federal lawsuit. *See, e.g.*, *Kobishop v. Marinette Cnty. Sheriff's Dep't*, 2013 WL 3833990, at *2 (W.D. Wis. July 24, 2013); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010). Plaintiff also suggests that defendant Hrudka violated Wis. Stat. § 51.30(4)(b)(10)d., which is part of the statue explaining under what circumstances confidential treatment records may be released *without* a person's consent. That provision states that records may be provided to a probation agent as follows:

> Any information necessary to establish, or to implement changes in, the individual's treatment plan or the level and kind of supervision on probation, extended supervision or parole, as determined by the director of the facility or the treatment director. In cases involving a person transferred back to a correctional facility, disclosure shall be made to clinical staff only. In cases involving a person on probation, extended supervision or parole, disclosure shall be made to a probation, extended supervision and parole agent only. The department shall promulgate rules governing the release of records under this subdivision.

Thus, even under the terms of this statute, it was appropriate for Hrudka to notify Agent Lutz about plaintiff's withdrawal from treatment, as one aspect of plaintiff's withdrawal (further assessment) directly violated one of plaintiff's conditions of extended supervision. Plaintiff states that his "commitment under chapter 980 is not a condition of his extended supervision plan," Dkt. 71, at 32, but this is not the point. His agreement to undergo continuing assessments was undisputedly a condition of his confinement, and Agent Lutz had a right to know about whether he was meeting that condition. Therefore plaintiff cannot succeed on a claim under § 51.30.

Plaintiff also brings a claim that defendant Agent Lutz shared information with a Chapter 980 patent named Lee R. In a conversation with Agent Lutz about a separate incident, Lee R. told her that he had two witnesses, including plaintiff. Agent Lutz told Lee R. that he would not want to call plaintiff as a witness because he was being revoked for "sexual misconduct" and that he was not credible. Dkt. 46-1, at 14. It is unclear how plaintiff believes this information could constitute confidential information. It is implausible to suggest that probation revocation records could be "treatment records" under Wis. Stat. § 51.30, and plaintiff does not argue any other source of a potential claim, nor has my research revealed any possible causes of action that could be supported by this allegation. Accordingly, I will dismiss plaintiff's complaint regarding this allegation against Agent Lutz.

      c.      **Probation revocation**

I understand plaintiff to be alleging that his rights were violated when he "was illegally transferred from the custody of the DHS to the custody of the Department of Corrections . . . without a court order from the court which placed [plaintiff] in the custody of the DHS." Dkt. 2-2, at 2. Plaintiff was revoked for failing to meet the condition that he "[c]ontinue counseling and other assessments to be determined." Dkt. 59-4, at 204. Defendants Agent Lutz and

Bucholtz commenced the revocation proceedings, defendant ALJ Beckwith revoked plaintiff's probation for his decision to stop treatment and defendant Schwartz upheld that decision. Plaintiff also alleges that defendant Marik, a DCC Corrections Field Supervisor, "sanctioned the illegal actions of [Sand Ridge] staff and the Division of Community Corrections" in ways that contributed to plaintiff being imprisoned after revocation. *Id*. at 11. Finally, from plaintiff's summary judgment materials, I understand him to be arguing that defendant Hedrich mischaracterized plaintiff's withdrawal from "treatment" as a withdrawal from "assessment."

The thrust of plaintiff's claim seems to be that plaintiff believes that he should not have been revoked on his criminal conviction while he was a Chapter 980 patient, and he suggests that he was not subject to conditions of extended supervision while he was civilly committed. He also argues that he was revoked for refusing treatment, which he would usually have the right to do under Wis. Stat. § 51.61 as a civilly committed person.

However, as defendants argue, these issues have already been resolved by the Wisconsin courts on plaintiff's appeal of the revocation, and thus plaintiff is precluded from relitigating them in this court. *See State ex rel. Tyler v. Wiedenhoeft*, 2013 WI App 115, 350 Wis. 2d 507, 838 N.W.2d 137. A state court judgment is entitled to the same preclusive effect in federal court as that judgment would have in state court. *Allen v. McCurry*, 449 U.S. 90, 96 (1980). The test for issue preclusion in Wisconsin has two parts. The first is whether "the question of fact or law that is sought to be precluded actually must have been litigated in a previous action and [have been] necessary to the judgment." *Mrozek v. Intra Financial Corp.*, 2005 WI 73, ¶ 17, 281 Wis. 2d 448, 699 N.W.2d 54. If the issue has actually been litigated, the second part of the test requires that it be "fundamentally fair to employ issue preclusion given the circumstances of the particular case at hand." *Id*. The factors that courts may consider when undertaking the second step are:

(1) could the party against whom [collateral estoppel] is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking [collateral estoppel] had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Michelle T. v. Crozier*, 173 Wis.2d 681, 689, 495 N.W.2d 327, 330–31 (1993) (footnote omitted).

Both parts of these tests are met in this case. The ALJ, Dkt. 59-4, circuit court, Dkt. 4-5, and court of appeals, Dkt. 4-6, all concluded that plaintiff was indeed on extended supervision while he was a Chapter 980 patient, and that his refusal to participate in an assessment violated the conditions of his probation. As for the factors mentioned in the second part of the test, there have been no intervening shifts on the law, and plaintiff was clearly given a fair, extensive opportunity to litigate these issues in the state proceedings, through both two rounds of administrative review and two rounds of court review.

The only argument plaintiff raises that addresses the issue preclusion argument is that the ALJ and courts failed to address the issue whether plaintiff had the right to refuse *treatment* under Wis. Stat. § 51.61, as opposed to whether he refused an *assessment*. However, the issue of refusing treatment is irrelevant because the record shows that plaintiff was revoked for refusing assessment, not treatment, as noted by the court of appeals. *State ex rel. Tyler*, 2013 WI App 115, ¶ 7. The court stated, "Tyler's argument that his right to refuse treatment under WIS. STAT. § 51.61 trumps the conditions of his extended supervision fails because that statute does not allow a WIS. STAT. ch. 980 patient to refuse *assessment*." The court explicitly noted that it "express[ed] no opinion on the question of whether WIS. STAT. § 51.61 would affect a

15

condition of extended supervision that required participation in treatment." *Id.* at ¶ 7 n.2. Because Wisconsin courts have already ruled on the questions of plaintiff's status on extended supervision and whether his refusal to be assessed violated a condition of his extended supervision, plaintiff cannot bring claims against the defendants for revoking his probation.

Alternatively, I conclude that defendants are correct when they argue that at least some of plaintiff's claims regarding his revocation are barred by immunity. Defendants Beckwith and Schwartz have absolute immunity in their quasi-judicial roles in the revocation process. *Smith v. Gomez*, 550 F.3d 613, 618-19 (7th Cir. 2008) ("when officials engage in activities that are inexorably connected with the execution of parole revocation procedures and are analogous to judicial action they are also entitled to absolute immunity") (quotation omitted).

In his complaint, plaintiff does not explain how defendant Marik was involved in the revocation process, but on summary judgment states that he "presided over [his] preliminary hearing." Given the notice of preliminary hearing submitted by plaintiff, I understand Marik's role in that hearing was to determine whether there was probable cause to believe that plaintiff violated the conditions of his extended supervision. *See* Dkt. 74-2, at 116. This is a role sufficiently analogous to judicial action that Marik has absolute immunity as well.

> **d.    Discrimination based on disability**

Plaintiff also alleges that Agent Lutz discriminated against him in the revocation proceedings by not considering plaintiff for certain "alternatives to revocation" because he was committed under Chapter 980. Agent Lutz's "revocation summary" stated that placing plaintiff in a halfway house was "unavailable" for "civilly committed offenders" and that "Institutional Programming for community based SOT, CGIP" was "currently unavailable" for civilly committed offenders who were required, under Chapter 980, to be housed at a treatment facility. Dkt. 79, at 34.

16

It is difficult to understand the precise theory behind plaintiff's claims. Plaintiff states that he is "protected from discrimination by the Americans with Disabilities Act, the Rehabilitation Act and the laws of the State of Wisconsin" and suggests that he has an equal protection claim as well. Dkt. 2-2 at 2, 9. Plaintiff appears to believe that his "mental disorder" causing his sex offender status is his disability, although he appears to be basing an equal protection claim on the disparate treatment he received as a sex offender who is currently civilly committed, as opposed to other sex offenders who are not committed.

In any event, plaintiff's claims are fundamentally flawed and must be dismissed. As a starting point, plaintiff cannot bring claims under the ADA or Rehabilitation Act against government officials such as Agent Lutz in their individual capacities, as these types of claims can only be brought against "public entities." *See Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012). Even to the extent that plaintiff might be able to bring these types of claims as official capacity claims against the Department of Corrections, or would be able to bring individual capacity claims under the Equal Protection Clause or any Wisconsin law, the alleged discriminatory acts cannot support a claim under any of these theories.

Defendants state that they "have located no federal or State court decision that could conceivably support the concept that an agent violates disability discrimination laws by determining a potential alternative to revocation out in the community to be unavailable because the probationer is civilly committed." Dkt. 41, at 38. This is unsurprising, as the premise behind these claims is that plaintiff, even though he was civilly committed under Chapter 980, should have been considered for a revocation placement *outside* of a treatment facility or prison. Placement in the community is logically incompatible with the commitment order already in place, so I cannot conceive of a possible claim for discrimination against

17

government officials who do not consider an outside placement for a civilly committed patient upon revoking the terms of his probation.

### e. False statements during revocation

I understand plaintiff to be bringing constitutional due process claims and state law malicious prosecution claims regarding allegedly knowingly false statements made by Agent Lutz and concealed by both Agent Lutz and defendant Bucholtz during and after the revocation proceedings.

July 7, 2011 Lutz completed a "revocation summary" form in which she wrote the following under "Alternative [to revocation] Considered": "To offer Mr. Tyler an Alternative to Revocation to include RCI SOT ATR Program is an inappropriate sanction due to the fact that he has completed the Beacon program SO-4: Intensive Residential, which is a more intensive Sex Offender Treatment Program than what is provided in this program." Dkt. 74-2, at 36. Plaintiff alleges that this is false, because he did not enroll in or complete the Beacon program. Plaintiff also alleges that both Agent Lutz and defendant Bucholtz knew this was false, yet "withheld the truth" until June 23, 2012. Agent Lutz went so far as to testify about plaintiff's completion of the Beacon program at the revocation hearing. I understand plaintiff to be saying that this false information foreclosed a possible alternative to revocation.

Defendants initially point out that there are disputes of fact regarding whether Agent Lutz and defendant Bucholtz knowingly lied about this information, which is an issue beyond the scope of this motion on "threshold issues." But they go on to argue that even if these defendants did lie or withhold information, plaintiff's claims would be barred by absolute immunity. I conclude that defendants are correct about two aspects of the timeline concerning these claims, but defendants do not fully develop an argument about the third aspect.

18

First, with regard to the "revocation summary" document containing Agent Lutz's recommendation that plaintiff's probation be revoked, Agent Lutz is entitled to absolute prosecutorial immunity for her actions acting as an advocate for the state. *Smith*, 550 F.3d at 617–18 (7th Cir. 2008) (prosecutorial immunity may extend to probation agents). Second, to the extent that plaintiff argues that Agent Lutz and Bucholtz "withheld the truth" about plaintiff's non-completion of the Beacon program even after the revocation hearing had concluded, both defendants may rely on prosecutorial immunity as well. *See Fields v. Wharrie*, 672 F.3d 505, 514-15 (7th Cir. 2012) ("As the original prosecutor, however, he was not fully divorced from Fields' judicial proceedings until all direct judicial remedies were exhausted and Fields' conviction became final. It follows that the immunity attendant to his prosecutorial disclosure obligation survives his departure from the courtroom as well.").

That leaves the claim about Agent Lutz's allegedly false testimony at the hearing itself. Under *Briscoe v. LaHue*, 460 U.S. 325, 335–36 (1983), witnesses enjoy absolute immunity from civil damages for claims related to their testimony. *See also Curtis v. Bembenek*, 48 F.3d 281, 285 (7th Cir. 1995). The absolute immunity announced in *Briscoe* applies to a prosecutor testifying in a judicial proceeding. *See House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992).

Defendants argue that, "[w]ithout exception, witnesses enjoy absolute immunity from civil liability on account of their testimony." Dkt. 60, at 30. But this is not entirely accurate: an exception to the rule of absolute testimonial immunity exists for "complaining witnesses." *Cervantes v. Jones*, 188 F.3d 805, 809 (7th Cir. 1999). A complaining witness is one "who actively instigated or encouraged the prosecution of the plaintiff." *Curtis*, 48 F.3d at 286. It would seem that Agent Lutz is a complaining witness, as she was intimately involved in bringing the revocation proceedings, but defendants do not cite to any authority discussing this murky area of the law. Defendants argue that all of their arguments in favor of dismissal should be

19

conceded because plaintiff does not develop an argument opposing defendants, but I will not hold a pro se plaintiff to such a stringent standard where defendants have not fully developed an argument supporting their own motion. This is a topic defendants may revisit if they choose to file a dispositive motion following the opening of discovery, but for now, these claims will proceed.

###### f.      Classification forms

Plaintiff alleges that defendant Marks, an offender classification specialist, intentionally prepared classification forms with false information. Defendants argue that plaintiff's claim is too vague to make out and that he has not pleaded what they believe to be a fraud claim with particularity. Based on plaintiff's summary judgment materials, I understand him to be arguing that he was unfairly placed in a maximum-security prison for four months instead of a lower security setting. Plaintiff also suggests that he was briefly placed in segregation based on Marks's report. Dkt. 80, at 56-57. This claim is more properly characterized as a due process claim regarding his prison assignment, but generally, prisoners have "no due process right to be housed in any particular facility." *Whitford v. Boglino*, 63 F.3d 527, 532 (7th Cir. 1995) (prisoner's transfer to maximum security prison did not implicate his federal due process rights). A prison assignment might implicate a liberty interest if the prisoner is sent to extremely harsh conditions of confinement such as segregation, for extended periods of time, *see Wilkinson v. Austin*, 545 U.S. 209, 222-24 (2005), but none of the allegations in the complaint or proposed findings of fact support such a claim. Accordingly, plaintiff's claims against Marks must be dismissed.

###### g.      Property and access to the courts

Plaintiff alleges that defendants Agent Lutz, Kneepkens, McCulloch, and Parker prevented him from obtaining his money and property upon his transfer to the Milwaukee Secure Detention Facility, which plaintiff says resulted in a violation of his right to access the

courts. Defendants argue in part that none of the defendants intentionally withheld any property of his. This is a factual dispute that cannot be fully fleshed out in the current briefing on "threshold issues" without allowing discovery.

Confined or detained persons have a constitutional right to "meaningful access to the courts" to pursue post conviction remedies and to challenge the conditions of their confinement. *Bounds v. Smith*, 430 U.S. 817, 821–22 (1977); *Lehn v. Holmes*, 364 F.3d 862, 865–66 (7th Cir. 2004). To succeed on such a claim, plaintiff must show that defendants' interference caused an "actual injury," which means that it must have caused plaintiff to lose a meritorious claim or the chance to seek particular relief. *Lewis v. Casey*, 518 U.S. 343, 346–348 (1996); *Christopher v. Harbury*, 536 U.S. 403, 414 (2002); *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). The named defendants must have been personally responsible for the constitutional violation; a plaintiff cannot rely on supervisory or *respondeat superior* liability to make out a constitutional claim. *Morfin v. City of East Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003).

It is undisputed that plaintiff ultimately shipped his property to Ronald Tyler. In the interim, while plaintiff's property was being held by prison officials, even assuming the named defendants were responsible for the withholding of that property, plaintiff fails to state a claim upon which relief can be granted because he does not identify any meritorious legal action that he lost because he failed to have his property or money at his disposal. The only litigation plaintiff mentions is his revocation and appeals of that decision, but it is clear from the Wisconsin courts' rulings and my own review of the record that plaintiff did not have a meritorious case; he failed to comply with the terms of his extended supervision. The main thrust of plaintiff's opposition to the revocation was that he was not actually on extended supervision as a Chapter 980 patient, but that position has no merit. Plaintiff does not provide

any other suggestion of how the outcome of his proceedings would have been different. Therefore, I will grant defendants' motion for summary judgment on this claim.

### h.   Notice of claim

Aside from their claim-specific arguments, defendants also argue that plaintiff's state law claims for damages must be dismissed because he did not give proper notice with respect to each incident of harm in compliance with the requirements of Wisconsin's notice-of-claim statute, Wis. Stat. § 893.82. Under this statute, none of plaintiff's state-law claims may be brought "unless within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employee or agent involved." Section 893.82(3).

Plaintiff's complaint states, "The events causing injury were revealed on September 21, 2011. Pursuant to Wis. Stat § 893.82, Tyler filed a notice of claim on January 18, 2012." Defendants note that plaintiff appears to be arguing that the 120-day time limit should be allowed to start on this date, which would place his notice arguably within 120 days of September 21, 2011 (although plaintiff states that he submitted the notice into the prison mail stream on January 18, 2011, defendants state that the Notice of Claim was postmarked January 21, 2012 and received by the Attorney General on January 24, 2012, both dates being more than 120 days from September 21, 2011).

Defendants persuasively argue that plaintiff cannot use the "discovery rule" to push the date of various events forward to September 21, 2011; the general rule in Wisconsin is that the time to file a notice of claim runs from the date of the injury, not the date on which the claimant discovers the injury. *Weis v. Bd. of Regents of the Univ. of Wisconsin Sys.*, 837 F. Supp. 2d

971, 979 (E.D. Wis. 2011) (citing *Oney v. Schrauth*, 197 Wis.2d 891, 899–900, 541 N.W.2d 229, 231–32 (Ct. App. 1995) (noting that notice of claim statute specifically allows for application of discovery rule for medical malpractice claims, or actions based on contribution or indemnification, but is silent as to any other claim). Therefore, the relevant date is when each event giving rise to the claim occurred.

Many of plaintiff's state claims predate the 120-day limit, including his claims about the BDR, release of confidential information, and parts of his claims about his alternatives to revocation, defendants' alleged false information about the alternatives, and claims about his property. Other claims, such as the BDR claims, are not mentioned at all in the notice of claim and thus fail on that ground.

The one state claim not already dismissed on other grounds is plaintiff's malicious prosecution claim against Agent Lutz for lying in the September 21, 2011 hearing about plaintiff's completion of the Beacon program. This claim could survive defendants' notice-of-claim-argument depending on the dispute over when plaintiff sent the notice, so I will not dismiss it before further discovery has been conducted.

### 2.    Official capacity claims

Plaintiff also states that he is bringing official capacity claims against each defendant for the various alleged violations of his rights. Even if plaintiff could bring many of the federal claims he attempts to state in his complaint, virtually all of his claims would be barred by the doctrine of sovereign immunity. That doctrine is derived from the Eleventh Amendment and generally bars actions in federal court against a state, state agencies, or state officials acting in their official capacities," *Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010), unless the state waives immunity, Congress abrogates it or the claim falls under the exception articulated by the Supreme Court in *Ex Parte Young*, 209 U.S.

123 (1908). Under *Ex parte Young*, a plaintiff may file "suit[ ] against state officials seeking prospective equitable relief for ongoing violations of federal law . . . ." *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997).

The only arguable claim for prospective relief relates to plaintiff's requests for his 12 boxes of property to be returned to him, by which I understand him to be saying that he wants the property with him at Sand Ridge instead of with his relative on the outside. But in any event, I have already concluded that plaintiff fails to state an access to the courts claim regarding this property so there is no need to consider an official capacity claim on this theory. Accordingly, all of plaintiff's official capacity claims will be dismissed.

ORDER

IT IS ORDERED that:

1. Plaintiff's motion for preliminary injunctive relief regarding his legal materials, Dkt. 32, is DENIED.

2. Defendants' motion for summary judgment, Dkt. 41, is GRANTED in all respects except regarding plaintiff's federal and state claims against defendant Agent Lutz in her individual capacity for providing false information at plaintiff's revocation hearing.

3. All defendants other than Agent Lutz are DISMISSED from the case.

4. The current schedule is STRICKEN and a new schedule will be set shortly.

Entered March 31, 2015.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

24