IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MATTHEW TYLER,

                    Plaintiff,

v.

STEPHANIE WICK, SANDRA HANSEN,
PETER MARIK, K. MARKS, DAVID H. SCHWARZ,
MARGARET BECKWITH, DEBORAH MCCULLOCH,
ROBERT KNEEPKENS, JEFFREY P. HRUDKA,
MARK SPEES, ALBERT LAVENDER, ERIC SWIATLY,
MIKE LUTZ, VAL LITTY, DONNA HEDRICH,
JAMIE OLSON, STEVE SCHNEIDER,
and WILLIAM PARKER,

                    Defendants.

OPINION & ORDER

14-cv-68-jdp

---

      Plaintiff Matthew Tyler, a person civilly committed to the Sand Ridge Secure Treatment Center under Wis. Stat. Chapter 980, brought this lawsuit alleging that various state officials violated his rights with regard to his probation revocation and several other issues during his placement at state facilities. In a March 31, 2015, order, I granted defendants' "motion for summary judgment restricted to threshold issues" in almost all respects, leaving only plaintiff's federal and state claims against defendant Agent Lutz[1] in her individual capacity for providing false information at plaintiff's revocation hearing.

      Currently before the court are three motions. First is plaintiff's motion under Federal Rule of Civil Procedure 54(b) to revise the March 31 order in several respects. Second,

---

[1] In keeping with the March 31, 2015, order, I will refer to defendant Stephanie Wick as "Agent Lutz" because Lutz was her surname during the events in question and the parties refer to her as such in their briefing.

plaintiff has also filed a motion to compel discovery. Third, defendants have filed a motion for summary judgment on the remaining claims against Agent Lutz.

After considering the parties' submissions, I will grant plaintiff's motion to revise the March 31 order in one respect—I conclude that his complaint includes due process claims for deprivation of a property interest in his personal property and money in conjunction with his transfers away from and back to Sand Ridge. I will deny the motion to revise in all other respects, and deny plaintiff's motion to compel as moot. Also, I will grant defendants' motion for summary judgment on plaintiff's federal and state claims against Agent Lutz for providing false information during the revocation proceedings. I will set a final round of summary judgment briefing on plaintiff's due process claims, which are now the only claims remaining in the case.

**A. Motion to revise March 31, 2015, order**

Federal Rule of Civil Procedure 54(b) states that this court may revise any non-final order prior to entry of judgment adjudicating all of the claims in a case. Plaintiff seeks revision of certain aspects of the March 31 order. Motions to revise an order under Rule 54(b) are subject to a standard very similar to motions to alter or amend a judgment under Rule 59(e): they should be granted only to correct manifest errors of law or fact or to present newly discovered evidence. *See Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 665-66 (N.D. Ill. 1982)); *Bullock v. Dart*, 599 F. Supp. 2d 947, 964 (N.D. Ill. 2009). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224

F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F.Supp. 1063, 1069 (N.D. Ill. 1997)).

1. **Access to courts**

In the March 31 order, I denied plaintiff's motion for preliminary injunctive relief concerning access to the courts, in which he sought the provision of legal materials that were sent from Sand Ridge to one of his relatives. Plaintiff now argues that I erred in concluding that his "submission of over 100 pages of exhibits also suggests that he has access to materials to litigate this case," Dkt. 89, at 2.

Plaintiff argues that the "over 100 pages of exhibits" do not show that he could adequately litigate the case, at least in part because those documents "were taken directly from defendants submissions." Dkt. 91, at 4. Even if all of plaintiff's exhibits came from documents previously submitted by defendants (which from my own cursory review of the docket does *not* appear to be the case), that issue misses the point. The question is whether I should have ordered the materials to be given to plaintiff. I resolved that question as follows in the March 31 order:

> [T]o the extent that I understand plaintiff to be asking for preliminary injunctive relief regarding the provision of these materials, I would only consider such drastic action if I thought that defendants were actively blocking plaintiff from litigating this action. This is clearly not the case given the large amount of materials that plaintiff has been able to submit. Further, from plaintiff's briefing, he is not able to raise any compelling reason to think that he has been hampered from presenting evidence or argument. As stated in more detail below, the real problem with plaintiff's case is that he raises a series of claims that are either frivolous or barred.

Dkt. 89, at 3.

Regardless of the source of plaintiff's submissions, he fails to show that there are any useful documents missing that he needed to litigate the previous summary judgment motion. He also seems to be arguing that defendants' submissions are not admissible because they came from their own documents, or that his own evidence was deemed inadmissible for similar reasons, *see* Dkt. 91, at 5, which is simply incorrect. Plaintiff provides no persuasive reason to reconsider this portion of the March 31 order.

Also in the March 31 order, I concluded that plaintiff failed to state an access to the courts claim against Agent Lutz, Robert Kneepkens, Deborah McCulloch, and William Parker for withholding money and property from him because he failed to identify any meritorious litigation that was thwarted by the withholding of this property:

> It is undisputed that plaintiff ultimately shipped his property to Ronald Tyler. In the interim, while plaintiff's property was being held by prison officials, even assuming the named defendants were responsible for the withholding of that property, plaintiff fails to state a claim upon which relief can be granted because he does not identify any meritorious legal action that he lost because he failed to have his property or money at his disposal. The only litigation plaintiff mentions is his revocation and appeals of that decision, but it is clear from the Wisconsin courts' rulings and my own review of the record that plaintiff did not have a meritorious case; he failed to comply with the terms of his extended supervision. The main thrust of plaintiff's opposition to the revocation was that he was not actually on extended supervision as a Chapter 980 patient, but that position has no merit. Plaintiff does not provide any other suggestion of how the outcome of his proceedings would have been different. Therefore, I will grant defendants' motion for summary judgment on this claim.

Dkt. 89, at 21.

Plaintiff now argues that "[t]he court did not address the 'access to the courts' claim in terms of all the issues in this case that [he] could not successfully litigate because of not having his legal material and money." Dkt. 91, at 3. By this I understand plaintiff to be

4

saying that his ability to litigate *this* case has been hampered by defendants' actions. It is dubious whether such a claim would even be ripe. This court has previously not allowed plaintiffs to bring access to the courts claims about the hindrance of other claims in the very same lawsuit. *See Cheek v. Beeman*, No. 13-cv-527-bbc, 2014 WL 1276412, at *2 (W.D. Wis. Mar. 27, 2014); *Smith v. Rose*, No. 09-cv-233-bbc, 2009 WL 1444140, at *5 (W.D. Wis. May 20, 2009).

Even if such a claim were ripe, plaintiff fails to show that I erred in dismissing it. The only argument plaintiff brings to develop this claim is that the loss of money and property thwarted his ability to file a notice of claim earlier than the notice he actually filed. However, the notice-of-claim issue is irrelevant to an access to the courts claim because this right is limited to challenges to his conviction and to claims brought under the United States Constitution challenging his conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 346-48 (1996) (The tools . . . require[d by the right to access the courts] are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."). Thus, even if plaintiff filed a brand-new lawsuit in which he alleged that his access to courts was violated through interference with his notice of claim, he would not be able to sustain such a claim. Therefore, I will deny plaintiff's motion to reconsider dismissal of an access to the courts claim.

**2. Due process – deprivation of property**

In the March 31 order, I outlined the various claims I understood to be part of the complaint.[2] Among those was the access to the courts claim discussed above against defendants Agent Lutz, Kneepkens, McCulloch, and Parker for withholding his money and property. Now plaintiff argues that he intended to bring a separate due process claim against these defendants for depriving him of his property interest in his money and property. That claim is based on the following allegations in his complaint:

- Defendants "deprived [plaintiff of] liberty and property without due process." Dkt. 2-2, at 2;

- "On August 1, 2011, Agent Lutz, Robert Kneepkens, and Deborah McCulloch conspired and did withhold Tyler's money and legal material. As such, Tyler was denied access to the courts." *Id*. at 9;

- Kneepkens told plaintiff that the "was the policy and practice of Sand Ridge . . . to send patient property and money after the revocation hearing," yet even after he was revoked he did not receive his money and legal property. *Id*. at 10;

- "[Plaintiff] was revoked on October 26, 2011, however his money and legal property were not sent to the institution where he was located." *Id*.; and

- "As of today 12 boxes of [plaintiff's] property has not been returned to him because of the actions of Deborah McCulloch, Robert Kneepkens, and Captain William Parker." *Id*.

Defendants argue that plaintiff did not assert a due process claim because he framed his property claim as an access to the courts claim, and because he said nothing about this claim in response to defendants' motion for summary judgment based on threshold issues, which

---

[2] Because this case was removed by defendants, and plaintiff is a civilly committed person rather than a prisoner, there was no order screening the complaint under 28 U.S.C. §§ 1915 or 1915A, which would usually outline the claims present in the complaint.

also addressed the property issue solely as an access to the courts claim. Plaintiff responds by stating that the court must construe his complaint liberally. In addition, the law does not require a plaintiff to plead particular legal theories, *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005), and does not require the court to proceed with the case on only the theories identified by a pro se plaintiff, *id*. ("particularly since he filed his complaint pro se, he should not be held to the . . . incorrect theor[ies] he did name.").

In this case, although plaintiff does seem to mention the deprivation of property as part of an access to the courts claim, he also includes a due process theory in the complaint. It is not obvious from the complaint that plaintiff means to state a due process claim based on the deprivation of his property, but given the liberal pleading standards applying to pro se complaints, I conclude that he has raised a colorable claim. As for whether plaintiff forfeited the claim by not raising it in response to defendants' original summary judgment motion, plaintiff argues that he was simply responding to the arguments raised by defendants. I will not refuse to consider plaintiff's due process claim just because he, as a pro se litigant, failed to speak up during briefing of the summary judgment motions that neglected to mention such a claim. Plaintiff's raising of the issue following the March 31 order summarizing what the court believed to be his claims (and leaving out a due process claim) is sufficient. I will grant plaintiff's motion to revise the March 31 order to the extent it seeks the court to recognize these claims as part of the case. Defendants McCulloch, Kneepkens, and Parker, who were previously dismissed from the case, will now be considered active defendants.

That still leaves a question about the contours of these claims. The allegations in plaintiff's complaint are somewhat vague. However, the parties' summary judgment briefing, particularly plaintiff's supplemental briefing on the alleged denial of access to his legal

7

materials, Dkt. 67, lays out plaintiff's claims with more precision. The grounds for plaintiff's claims are the following:

- On June 2, 2011, plaintiff was transported from Sand Ridge to the Milwaukee Secure Detention Facility based on his probation hold. Plaintiff's probation was revoked on October 26, 2011. Plaintiff was ordered to be returned to the Dodge Correctional Institution and re-incarcerated there for a period of nine months. However, I understand the parties to be in agreement that plaintiff was never transferred to the Dodge Correctional Institution. Rather, he stayed at MSDF and was transferred back to Sand Ridge on February 28, 2012.

- However, despite Sand Ridge rules suggesting that patients transferred to a DOC facility for a term of under a year "will transfer with their allowable personal property within the limits of the receiving facility," Dkt. 51-1, at 9-10, plaintiff never received his money or property from Sand Ridge while he was at MSDF.

- Plaintiff's 12 boxes of property were sent to a family member in December 2011. Once plaintiff returned to Sand Ridge, the boxes were shipped back to the facility, but plaintiff was not allowed to keep much of the property because it was sent from the outside, even though I understand plaintiff to be alleging that the boxes were never opened on the outside. Also upon return to Sand Ridge, plaintiff regained use of his money.

As for the parties' personal involvement in the deprivations of his property and money (which going forward I will generally collectively refer to as his "property"), I understand plaintiff to be asserting the following:

- Defendant Agent Lutz could have assisted plaintiff with transfer of his property during the revocation hearing.

- In August, 2011, defendant Kneepkens (the deputy director of the Sand Ridge facility) responded to a letter plaintiff sent to McCulloch (the Sand Ridge director) about his property, by stating that the Sand Ridge "policy and practice" was to send a patient his property after the revocation hearing. Agent Lutz was copied on this email. Yet plaintiff still did not receive his property upon revocation.

- On October 27, 2011, defendant Parker (who appears as a "property supervisor" on at least some of the documents submitted in this case) emailed Agent Lutz about plaintiff's revocation and property. He stated in part that "[t]he past practice has been that the DOC will not accept any property from Sand Ridge in these situations." Dkt. 74-2, Exh. B43, at 294.

- On November 29, 2011, defendant Parker sent a letter to plaintiff warning him that his property would be disposed of if he would not provide a forwarding address for his property.

- On December 1, 2011, a Sand Ridge staff member received an email from a MSDF social worker stating that plaintiff was asking about his property. The staff member sent an email (to whom I understand to be another Sand Ridge staff member) requesting confirmation that plaintiff had already received his property upon revocation. The response the staff member received was that defendant Parker and another captain "were working on this issue."

- In March 2012, plaintiff filed a "patient request" form stating that he did not receive a copy of his property sheet detailing the checks in his possession, all of his legal work, and he asked to switch some of the clothes in his immediate possession with some of those in storage. Defendant Parker responded by stating that plaintiff did in fact receive the items he said were missing and that his "request to review [his] storage bin will be honored according to the alphabetical schedule."

- Plaintiff filed two grievances about the problems with his property that were denied. Defendant McCulloch was one of the reviewers during the appellate process; she upheld the denial of both grievances.

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. To prevail on a § 1983 procedural due process claim, a plaintiff must demonstrate that he: (1) has a cognizable property interest; (2) has suffered a deprivation of

9

that interest; and (3) was denied due process. *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010).

I understand plaintiff to be alleging that defendants withheld his property from him both while he was awaiting revocation at MSDF and after he was revoked and was serving time at MSDF. I also understand him to be alleging that defendants forced him to transfer his property to a relative even though they knew plaintiff would be returning to Sand Ridge, and then refused to allow plaintiff to assume control over his property after it was sent back from the relative in unopened boxes.

It seems likely that defendants believe that they are entitled to summary judgment on plaintiff's due process claims, so I will set a briefing schedule for possible resolution of these claims. I will strike the existing schedule. The parties may conduct discovery in the meantime, although it is possible at this point that they already have the evidence they need. In conducting their supplemental briefing, the parties are free to submit supplemental proposed findings of fact if they deem it necessary, but they are not required to do so. Should plaintiff's claims survive summary judgment, or if defendants choose not to file a summary judgment motion, I will set a new trial date and related schedule.

### 3. Sovereign immunity

Plaintiff also raises an argument that sovereign immunity does not block his state law claims that defendants shared confidential information pertaining to plaintiff without his permission and violated his rights under Wis. Stat. § 51.61 (titled "Patients rights") during "behavior disposition record" proceedings. But I did not dismiss these claims on sovereign immunity grounds. Rather, I concluded both that plaintiff failed to file a timely notice of

claim regarding these claims, and that the confidentiality claim failed on the merits. *See* Dkt. 89, at 11-13, 22-23. I will not modify the March 31 order as it relates to these claims.

4. **Refusal of treatment**

Plaintiff continues to argue that his probation was wrongfully revoked for refusing treatment (which he would usually be able to choose as a civilly committed person). But his new brief is just a rehash of his previous argument, which I rejected on issue preclusion grounds because the Wisconsin Court of Appeals had already ruled that plaintiff was appropriately revoked for violating the terms of his extended supervision by refusing *assessment* of treatment options. There is an admittedly fine line between the terms "treatment" and "assessment," but the place for plaintiff to challenge that distinction was in the state courts. He cannot now relitigate the issue in this case. Nothing in plaintiff's new brief changes that ruling.

B. **Motion for Summary Judgment**

Defendants have filed a motion for summary judgment on plaintiff's federal due process and state law malicious prosecution claims against defendant Agent Lutz for providing false information at plaintiff's September 21, 2011 revocation hearing.

1. **Federal due process claim**

a. *Parratt* **defense based on state tort remedies**

Defendants first argue that plaintiff's federal due process claim for malicious prosecution cannot be brought under 42 U.S.C. § 1983 unless no remedy for the alleged conduct exists in state law, citing *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001). *See also Llovet v. City of Chicago*, 761 F.3d 759, 762 (7th Cir. 2014) ("plaintiff could not bring a federal malicious prosecution claim based on the due process clause of the Fourteenth

11

Amendment, because his malicious prosecution remedy under state law was adequate to give him all the due process to which he was entitled."). Defendants argue that the federal claim must be dismissed because Wisconsin courts recognize a malicious prosecution claim, which provides all the process due to plaintiff. *See Strid v. Converse*, 111 Wis. 2d 418, 423, 331 N.W.2d 350, 353-54 (1983) (recognizing a tort for malicious prosecution); *Whispering Springs Corp. v. Town of Empire*, 183 Wis. 2d 396, 404, 515 N.W.2d 469, 472 (Ct. App. 1994) (same). This argument is grounded in a line of cases holding that "random and unauthorized" actions by state officials do not give rise to federal procedural due process claims where state tort remedies are available. *See Parratt v. Taylor*, 451 U.S. 527, 541 (1981) (regarding negligent loss of prisoner's property); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional deprivation of property); *Zinermon v. Burch*, 494 U.S. 113, 132 (1990) (deprivation of liberty).

In his response, plaintiff does not address this argument, instead raising irrelevant arguments about the lack of a sovereign immunity defense or notice of claim requirement for the federal claim. Nonetheless, I am not persuaded that the *Parratt* rationale cited in *Newsome* applies to the facts at hand in light of the Seventh Circuit's recent decision in *Armstrong v. Daily*, 786 F.3d 529, 541-46 (7th Cir. 2015), in which the court clarified that a plaintiff could maintain federal due process claims regarding the loss or destruction of exculpatory evidence in a criminal proceeding despite the availability of state tort claims. The *Armstrong* court explicitly noted that in *Newsome*, *Parratt* did *not* bar the claim that police officers had withheld exculpatory evidence from the prosecutor and defense. *See Armstrong*, 786 F.3d at 541 (discussing *Newsome*, 256 F.3d at 752). Ultimately, the *Armstrong* court concluded that actions of an overzealous prosecutor were not necessarily random and unauthorized, pre-

12

deprivation process was not impractical (where the due process violations took place within the context of "the most elaborate pre-deprivation procedural protections known to American law: a criminal trial"), and that "[a]t the most fundamental level, it is an absurd notion" that there is no violation of a criminal defendant's constitutional right to due process where his trial is tainted by prosecutorial wrongdoing. 786 F.3d at 545-46. Although the alleged misconduct here took place in the context of probation revocation proceedings rather than a criminal trial, the similarities between the facts of this case and those of *Newsome* and *Armstrong* are striking. The problem for plaintiff is that even if I assume that the *Parratt* rationale does not doom his federal claim, the issue of immunity does.

  b.  **Immunity**

In the March 31 order, I dismissed several claims on immunity grounds, but declined to do so with regard to plaintiff's claims about defendant Agent Lutz's false testimony. I stated that it was possible that absolute immunity would not apply given the circumstances:

> Defendants argue that, "[w]ithout exception, witnesses enjoy absolute immunity from civil liability on account of their testimony." Dkt. 60, at 30. But this is not entirely accurate: an exception to the rule of absolute testimonial immunity exists for "complaining witnesses." *Cervantes v. Jones*, 188 F.3d 805, 809 (7th Cir. 1999). A complaining witness is one "who actively instigated or encouraged the prosecution of the plaintiff." *Curtis*, 48 F.3d at 286. It would seem that Agent Lutz is a complaining witness, as she was intimately involved in bringing the revocation proceedings, but defendants do not cite to any authority discussing this murky area of the law. Defendants argue that all of their arguments in favor of dismissal should be conceded because plaintiff does not develop an argument opposing defendants, but I will not hold a pro se plaintiff to such a stringent standard where defendants have not fully developed an argument supporting their own motion. This is a topic defendants may revisit if they choose to file a dispositive motion following the opening of discovery, but for now, these claims will proceed.

Dkt. 89, at 19-20.

Now defendants have persuasively developed their argument for absolute immunity. The foundational principle is that certain governmental functions are so important and vulnerable to interference by means of litigation that those functions are protected by absolute immunity from civil liability to ensure that they are performed with complete independence. *Rehberg v. Paulk*, 132 S. Ct. 1497, 1503 (2012) (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988) and *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Among these absolutely immune functions are those of legislators, judges, prosecutors, and witnesses testifying at trial. *Id*. The immunity for witnesses had, in some contexts, been subject to an exception for so-called "complaining witnesses." Plaintiff does not quite put it in these terms, but the gist of his argument is that Agent Lutz should be deemed to be a complaining witness who is not entitled to absolute immunity.

Historically, a complaining witness was one who set in motion a prosecution by submitting a complaint or otherwise instigating a legal action. *Id*. In that sense, a law enforcement official who applies for an arrest warrant or a search warrant could be thought of as a complaining witness who would not be entitled to absolute immunity for those activities. *Id*. at 1507. The issue in *Rehberg* was whether a law enforcement officer—even one who might have served a role analogous to a complaining witness—was entitled to absolute immunity for his grand jury testimony. The Supreme Court held that the testifying officer is entitled to absolute immunity for his grand jury testimony, just as he would be for his testimony at trial. *Id*. at 1508. The rationale of *Rehberg* applies equally to witnesses in a revocation hearing.

Plaintiff raises two arguments on this issue. First, he argues that defendants seek immunity based on Agent Lutz's title alone, but this is an incorrect reading of defendants'

14

briefs. Plaintiff argues for a "functional" approach to the issue, which is the thrust of defendants' argument as well, and the basis for the Supreme Court's decision in *Rehberg*. Lutz's title is not the basis for her immunity, it is the function she was performing—serving as a witness at the revocation hearing.

Second, plaintiff argues that Agent Lutz had a ministerial duty to properly investigate the allegations that plaintiff violated his revocation, "know [his] complete history and . . . testify accordingly." Dkt. 115, at 20. Because plaintiff invokes the concept of "ministerial duty," I understand plaintiff to be arguing that Agent Lutz is not entitled to absolute immunity as a public officer under Wisconsin law. In Wisconsin, public officer immunity is subject to four basic exceptions, one of which is that public officers are not immune from claims based on the failure to perform a ministerial duty imposed by law. *Brown v. Acuity*, 2013 WI 60, ¶ 42, 348 Wis. 2d 603, 833 N.W.2d 96 (citing *Lodl v. Progressive Northern Ins. Co.*, 2002 WI 71, ¶ 24, 253 Wis. 2d 323, 646 N.W.2d 314). Wisconsin-law public officer immunity does not apply to federal claims, this is beside the point. Regardless whether Agent Lutz is subject to some type of public officer immunity under either Wisconsin or federal law, she is entitled to absolute immunity under *Rehberg* as a witness testifying in a proceeding. Therefore, I must dismiss plaintiff's federal claim.

  2. **State law malicious prosecution claim**

    a. **Notice of claim**

Defendants argue that plaintiff's state law malicious prosecution claim must be dismissed because plaintiff did not comply with Wisconsin's notice-of-claim statute, Wis. Stat. § 893.82. Compliance with the notice-of-claim statute is a jurisdictional requirement for a state law claim against a state employee. *Ibrahim v. Samore*, 118 Wis. 2d 720, 726, 348

N.W.2d 554, 558 (1984); *see also Weinberger v. Wisconsin*, 105 F.3d 1182, 1188 (7th Cir. 1997) ("Section 893.82 is jurisdictional and strict compliance is required."). Under this statute, none of plaintiff's state-law claims may be brought "unless within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employee or agent involved." Section 893.82(3).

The issue at the heart of the notice-of-claim question is how to calculate the 120-day limit. Defendants argue that the attorney general must have *received* the notice within 120 days of the event causing harm to the plaintiff. Under this theory, plaintiff failed to comply with the notice-of-claim statute—his notice of claim was postmarked January 21, 2012 and received by the Attorney General on January 24, 2012. Both dates are more than 120 days from September 21, 2011. Plaintiff states that he placed the notice in the prison mailbox on January 18, 2012, which is within the limit.

Plaintiff argues that the prison "mailbox rule" should apply to his notice of claim. *See Houston v. Lack*, 487 U.S. 266, 270-72 (1988) (pro se prisoner's notice of appeal deemed filed when prisoner delivers notice to prison authorities for mailing). Wisconsin courts have adopted similar rules for prisoners in various contexts. *See State ex rel. Nichols v. Litscher*, 2001 WI 119, ¶ 24, 247 Wis. 2d 1013, 635 N.W.2d 292 (citing *Houston* in adopting tolling rule for pro se prisoners filing petition for review with Wisconsin Supreme Court); *Shimkus v. Sondalle*, 2000 WI App 238, ¶ 13, 239 Wis. 2d 327, 620 N.W.2d 409 (time limit for filing certiorari petition in circuit court tolled when prisoner places petition in institution mailbox).

The parties provide no cases applying the mailbox rule question to the notice-of-claim scenario present here, and my own research does not uncover any cases resolving the issue. Although the cases in which Wisconsin courts have invoked their version of the mailbox rule involve court filings rather than notices of claim, I am persuaded that the courts would apply the rule in such a situation, so I will not dismiss the malicious prosecution claim for plaintiff's failure to comply with § 893.82.[3]

### b. Immunity

Plaintiff's state law malicious prosecution claim runs into the same immunity problem as his federal claim. Defendant Agent Lutz is entitled to the same absolute immunity for her witness testimony under Wisconsin law as she received regarding plaintiff's federal claim. *See, e.g.*, *Paige K.B. v. Molepske*, 219 Wis. 2d 418, ¶ 11, 580 N.W.2d 289 (1998) ("Drawing from the reasoning of the United States Supreme Court, Wisconsin courts apply a functional analysis to determine whether such absolute immunity attaches to a particular defendant . . . ."); *Bergman v. Hupy*, 64 Wis. 2d 747, 750, 221 N.W.2d 898, 900 (1974) ("Witnesses in judicial proceedings are immune from civil liability for damages caused by false and malicious

---

[3] In the March 31, 2015, order, I stated that plaintiff's claims could "survive defendants' notice-of-claim argument depending on the dispute over when plaintiff sent the notice, so I will not dismiss it before further discovery has been conducted." Dkt. 89, at 23. Defendants argue in their reply that plaintiff provides insufficient evidence to show that he actually placed the notice in the prison mailbox on January 18, 2012, and that the quoted language from the March 31 order above shows that I believed plaintiff's evidence to be insufficient as well. This is an incorrect reading of the order. Plaintiff avers that he placed the notice in the prison mailbox on January 18, 2012, Dkt. 74, at 13, ¶ 87, which is sufficient to avoid summary judgment on this issue. Although plaintiff somewhat confusingly supports this statement with a cite to an exhibit explaining postal rates at Sand Ridge, I understand him to be basing his statement about the date on his own personal knowledge, rather than the postal rules. If plaintiff's malicious prosecution claim had survived this order, defendants would have been free to bring evidence showing that plaintiff's date is incorrect. However, as discussed further below, the claim will be dismissed on immunity grounds.

testimony, if relevant to the issues in the matter where the testimony is given.") (internal quotations omitted); *Snow v. Koeppl,* 159 Wis. 2d 77, 81, 464 N.W.2d 215, 216 (Ct. App. 1990) ("The Wisconsin rule [for witness immunity] is in harmony with the general rule throughout this country."). Accordingly, I will dismiss plaintiff's state law malicious prosecution claim on immunity grounds.

**C. Motion to Compel**

Plaintiff has filed a motion to compel discovery concerning various requests he made to defendants about his now-dismissed claims. As discussed above, those claims have all been dismissed on threshold legal issues unrelated to plaintiff's ability to gather discovery from defendants. Therefore I will deny the motion as moot.

ORDER

IT IS ORDERED that:

1. Plaintiff Matthew Tyler's motion to revise the March 31, 2015, order in this case, Dkt. 91, is GRANTED in part. The court recognizes as part of this lawsuit plaintiff's due process claims regarding defendants Agent Lutz, McCulloch, Kneepkens, and Parker's deprivation of his property interest in his personal property and money. Defendants McCulloch, Kneepkens, and Parker, who were previously dismissed from the case, are now considered active defendants.

2. Plaintiff's motion to revise the March 31 order is DENIED in all other respects.

3. Defendants' motion for summary judgment on plaintiff's federal due process and state law malicious prosecution claims against defendant Agent Lutz for providing false information at plaintiff's September 21, 2011, revocation hearing, Dkt. 95, is GRANTED, and these claims are DISMISSED.

4. Plaintiff's motion to compel discovery, Dkt. 101, is DENIED as moot.

5. The current schedule is STRICKEN. The schedule for briefing a summary motion by defendants on plaintiff's due process claims is as follows:

    Defendants' brief-in-chief: February 8, 2016

    Plaintiff's response: March 7, 2016

    Defendants' reply: March 17, 2016

Entered December 4, 2015.

                                 BY THE COURT:

                                 /s/

                               _____
                               JAMES D. PETERSON
                               District Judge